UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AVIAMAX AVIATION LTD., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:08-cv-1958 (CFD) |
| | : | |
| BOMBARDIER AEROSPACE CORPORATION. | : | |
| Defendant. | : | |

RULING ON MOTION TO DISMISS

The plaintiff, Aviamax Aviation Ltd. ("Aviamax"), brought this suit against Bombardier Aerospace Corporation ("Bombardier") alleging fraud, negligent misrepresentations, negligence, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").[1]  Bombardier now moves to dismiss Aviamax's complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) stating that Aviamax fails to plead fraud with particularity and fails to state claims upon which relief can be granted.  For the reasons that follow the motion to dismiss is granted.

I.    **Background**[2]

Aviamax is a Cayman Islands corporation having its principal place of business in the Cayman Islands.  Bombardier is a Delaware corporation with a principal place of business in Texas.  Bombardier is licensed to conduct business in the State of Connecticut and maintains a facility in Windsor Locks, Connecticut.

_____

[1] The claimed basis for subject matter jurisdiction is diversity of citizenship of the parties.

[2] The following facts are taken from Aviamax's complaint and the relevant agreements that are "integral" to the complaint (specifically the Aircraft Purchase Agreement and Third Amendment, submitted in conjunction with the defendant's motion to dismiss), see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991), and must be assumed to be true in resolving the motion to dismiss.

On January 30, 2006, non-party Aviamax GmbH ("GmbH") entered into an aircraft purchase agreement with Bombardier ("Agreement") in which GmbH agreed to purchase a Bombardier Challenger aircraft ("aircraft") for $25,850,000. The "presentation" (or delivery) date was set for October 31, 2007 at Bombardier's facilities in Windsor Locks. On February 27, 2007, Amendment Number 2 to the Agreement changed the delivery date to November 29, 2007. On March 20, 2007, GmbH assigned its interest in the Agreement to Aviamax.

Although Bombardier was to deliver the aircraft, the Agreement provided that Bombardier would subcontract the outfitting of the aircraft to Midcoast Aviation Inc. ("Midcoast"). According to Aviamax, Bombardier represented that both Midcoast and Bombardier had the certifications and expertise required to outfit the aircraft and that Midcoast could perform the work in the same time frame as Bombardier. In May 2007, Bombardier completed the shell and operating systems of the aircraft, and it was delivered to Midcoast for completion. On July 5, 2007, Aviamax entered into a resale agreement with non-party Ranch Assets Holding Ltd. ("Ranch"), whereby Aviamax agreed to sell the aircraft to Ranch for $29,260,000 ("Ranch Contract"). The Ranch Contract was not contingent upon delivery by a certain date. Bombardier and Midcoast knew about the resale contract based on a written authorization which allowed Ranch to inspect the aircraft.

In January 2008, Bombardier informed Aviamax that delivery of the aircraft would be further delayed until July or August 2008. Aviamax claims that at this time it also discovered what Bombardier already knew but had allegedly concealed from Avaimax—that Midcoast was not duly certified by the FAA to outfit the aircraft. Aviamax alleges that Bombardier "assured Aviamax that the certifications would be forthcoming shortly and that Midcoast's current lack of

certification would not further delay the delivery of the Aircraft." Bombardier also allegedly "represented and promised that the Aircraft would be completed and delivered by July 2008, with an absolute outside date of August 2008." Aviamax claims that it was induced into signing the Third Amendment to the Agreement based on these false representations. The Third Amendment provided that Bombardier would pay liquidated damages per day to Aviamax for the delays caused by Bombardier and Midcoast through September 30, 2008, and also set a "target" presentation date of August 2008. The Third Amendment also provided that Aviamax could terminate the Agreement if the aircraft was not delivered before September 30 and contained a merger clause stating that no other representations had been made concerning presentation date and payment terms.

Aviamax claims that, in reliance on these representations, it cancelled the Resale Contract with Ranch on June 6, 2008. On June 15, 2008, Aviamax entered into a new contract with a different purchaser ("Purchaser Two") to sell the aircraft at a higher price. However, Purchaser Two later cancelled the contract. According to Aviamax, the cancellation occurred after Bombardier failed to deliver the aircraft by July 15, 2008. Shortly thereafter, on August 16, 2008, Aviamax entered into a letter of intent for the sale of the aircraft with a third purchaser ("Purchaser Three"). Purchaser Three, however, allowed its letter of intent to expire in September 2008.

According to Aviamax, the completed aircraft was delivered in late December 2008. Aviamax apparently accepted delivery. Aviamax alleges that it has not been able to find another buyer for the aircraft.

It also appears that Bombardier has paid Aviamax the liquidated damages required under

the terms of the Third Amendment.  Aviamax, however, now seeks non-contractual damages.

Aviamax claims that Bombardier intentionally and negligently misrepresented to Aviamax that

the aircraft would be delivered by August 2008 and that Midcoast had the ability to complete the

required work on time.  Aviamax alleges that Bombardier knew Aviamax would rely on these

misrepresentations and that Aviamax was injured because of these misrepresentations.  Aviamax

also claims that Bombardier was negligent and breached its duty to Aviamax to complete the

aircraft on time and to provide subcontractors with the proper certifications.  Finally, Aviamax

alleges that Bombardier's actions constitute an "unfair trade practice" in violation of CUTPA.

Bombardier moves to dismiss Aviamax's complaint, arguing that Aviamax has not pled

fraud with particularity and that, even if Aviamax did plead fraud with particularity, Aviamax

could not state a claim for fraudulent or negligent misrepresentation because Aviamax's reliance

was not reasonable and Aviamax caused its own losses.  Bombardier also argues that Aviamax

cannot state a claim in negligence because Bombardier did not owe Aviamax a duty independent

of the contract.  Finally, Bombardier argues that Aviamax's CUTPA claim fails because

Aviamax has not fulfilled the criteria of the so-called "cigarette rule."

## II.   Discussion

### A.   Choice of Law

The parties dispute whether New York or Connecticut law applies in this case.  In

deciding which law applies, a "federal court sitting in diversity applies the choice of law rules of

the forum state." Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999).  Connecticut

applies the law of the place of the injury to tort claims; if, however, this yields an arbitrary result,

then Connecticut applies the approach of the Restatement Second on Conflicts of Law, which

utilizes the "most significant relationship" test.  O'Connor v. O'Connor, 519 A.2d 13, 15, 21–22

(Conn. 1986).

Here, the place of injury is the Cayman Islands, where Aviamax is incorporated and has

its principal place of business.  See Alexander Hamilton Life Ins. Co. of Am. v. James River

Corp., No. 3:96cv1100(AHN), 1997 U.S. Dist. LEXIS 24148, at *13 (D.Conn. Jan. 14, 1997) (in

action for coercion and tortious violation of obligation of good faith and fair dealing, the place

where the plaintiff is injured is the location of the plaintiff's principal place of business).  Aside

from being the location of Aviamax's alleged injury, the Cayman Islands lack any connection to

this dispute.  Therefore, because the "place of the injury" test yields an arbitrary result, this Court

must apply the "most significant relationship" test.

To decide which state has the "most significant relationship" to the controversy, the

district court should consider various contacts including, "(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred, (c) the domicil, residence,

nationality, place of incorporation and place of business of the parties, and (d) the place where

the relationship, if any, between the parties is centered."  O'Connor, 519 A.2d. at 23.  The Court

must also consider

> "(a) the needs of the interstate and international systems, (b) the relevant policies
> of the forum, (c) the relevant policies of other interested states and the relative
> interests of those states in the determination of the particular issue, (d) the
> protections of justified expectations, (e) the basic policies underlying the
> particular field of law, (f) certainty, predictability and uniformity of result, and (g)
> ease in the determination and application of the law to be applied."

Id. at 22.

Of particular relevance in this case is Section 148 of the Restatement dealing with choice

of law in cases of fraud and misrepresentation.  Section 148 states that

> [w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflicts of Laws § 148(2).

Bombardier argues that applying New York law would "protect the justified expectations"of the parties because the parties agreed that New York law would govern their contractual relationship.  Bombardier asserts that although Aviamax's claims sound in tort, they are really premised on the Agreement, and thus the choice of law provision in the Agreement should be applicable.  "A broadly-worded choice-of-law provision in a contract may govern not only interpretation of the contract in which it is contained, but also tort claims arising out of or relating to the contract."  Travel Servs. Network, Inc. v. Presidential Fin. Corp. of Mass., 959 F. Supp. 135, 146 (D.Conn. 1997) (citing Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309–10 (2d Cir. 1994)).  A narrow choice of law provision, however, may not apply to related

tort claims.  See Greystone Cmty. Reinvestment Assocs., Inc. v. First Union Nat'l Bank,

NO.300CV871CFD, 2002 WL 229901, at *2 (D.Conn. Jan. 25, 2002).

      Here, the Agreement simply states that the "Agreement shall be governed by and

interpreted in accordance with the internal laws of the State of New York, USA, excluding any

conflicts of law provisions thereof."  Nearly identical language has been held by this Court to be

"too narrow to encompass tort claims arising out of contract-related transactions."  U.S. Fid. &

Guar. Co. v. S.B. Phillips Co., Inc., 359 F. Supp. 2d 189, 205–06 (D.Conn. 2005) (discussing

choice of law provision which stated that the agreement would be "governed by and construed in

accordance with" Connecticut law).  Although the tort claims may be "closely related" to the

subject of the contract, this relatedness is not sufficient to make the choice of law provision

applicable in the tort context.  See Benefit Concepts New York, Inc. v. New Eng. Life Ins. Co.,

No. 3:03CV1456 (DJS), 2004 WL 1737452, at *3 (D.Conn. July 30, 2004).  Therefore, this

language is too narrowly drawn to dictate that New York law should also apply to tort claims

between the parties.

      The choice of law provision aside, the other factors indicate that Connecticut has the

"most significant relationship" to the dispute.  The place of the injury, domicile, and principal

place of business of the parties point to the Cayman Islands, Delaware, and Texas.  The "tangible

thing" (the aircraft) was located at various times in Missouri, Quebec, Illinois, and Connecticut.

Delivery of the aircraft, however, twice took place in Connecticut at Bombardier's Windsor

Locks facility, including the final delivery when title passed.  Moreover, the alleged

misrepresentations at issue here dealt with when the aircraft would be delivered to the

Connecticut facility.  Finally, Aviamax points to Connecticut's exemption of aircrafts from its

-7-

sales and use tax as evidence of Connecticut's strong interest in attracting aircraft sales and services to the state.  See Conn. Gen. Stat. §12-412(99).  Aviamax argues that the parties agreed that delivery of the aircraft would occur in Connecticut precisely to take advantage of Connecticut's policy in not taxing the sale.

Unlike Connecticut, New York has no connection with this dispute other than the choice of law provision indicated in the Agreement.  Because this choice of law provision is inapplicable to the claims here, a balance of the factors reveals that Connecticut has the most significant relationship to the dispute.  Therefore, Connecticut law applies.

B.      Motion to Dismiss Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).  In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

C.      Count One: Fraud

Aviamax alleges that Bombardier committed fraud by making false representations about Midcoast's certifications and ability to complete the required work, as well as Bombardier's

ability to deliver the aircraft by August 2008.  Aviamax further alleges that it signed the Third

Amendment and cancelled the Ranch Contract in reliance on these representations.  Aviamax

claims that it would not have cancelled the Ranch Contract had it known that the delivery of the

aircraft would be delayed beyond August 2008.

i.    *Pleading Fraud with Particularity*

Bombardier first argues that Aviamax's fraud claim should be dismissed because it fails

to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).  "Where

allegations of fraud are made, they must (1) specify the statements that the plaintiff contends

were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent."  Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.,

479 F. Supp. 2d 292, 298 (D.Conn. 2007) (internal quotations omitted).  Although "[m]alice,

intent, knowledge and other condition of mind of a person may be averred generally," the

plaintiff must "allege facts that give rise to a strong inference of fraudulent intent."  Id. (internal

quotations omitted).

Aviamax's complaint does not specifically identify which Bombardier employees made

the claimed representations to Aviamax, or when and where these representations were made.

Instead, Aviamax's complaint reads in general terms asserting that "Bombardier" made certain

representations.  These allegations of oral misrepresentations lack particularity and do not meet

the heightened pleading standard required under Federal Rule of Civil Procedure 9.

In response to the motion to dismiss, Aviamax does not address the oral

misrepresentations, but rather argues that the key misrepresentation is the Third Amendment

itself; more specifically, the language which states: "WHEREAS . . . Seller has most recently

informed Buyer that the delivery readiness of the Aircraft has been delayed to August 2008."
According to Aviamax, because the misrepresentation is made in writing, Bombardier has been
adequately apprised of the specifics of Aviamax's fraud claim; namely that Bombardier falsely
represented that the airplane would be delivered by August 2008.  Although the Third
Amendment does state that delivery had been delayed until August 2008, it also explicitly refers
to August 2008 as a "target date" for delivery of the aircraft.  Moreover, the Third Amendment
provides for potential delivery after the "target date," setting an amount of additional liquidated
damages if delivery after August 2008 occurred.  Therefore, it is questionable whether this
language can even be considered a misrepresentation.

     Moreover, by relying solely on the written language of the Third Amendment in support
of its claim of fraud, Aviamax is attempting to convert a claim of breach of contract into a tort
claim for fraud.  "Generally, the mere allegation that the defendants did not intend to honor their
contractual obligations does not alone create a basis for alleging fraud.  Rather, . . . the allegedly
defrauded party must allege specific facts from which a reasonable trier of fact could directly or
indirectly infer that the promisor intended not to honor his obligations *at the time the promise
was made*."  CLT Telecomm. Corp. v. Colonial Data Tech. Corp., No. CIV. 3:96CV2490
(AHN), 1997 WL 409525, at *2 (D.Conn. June 23, 1997) (internal citations omitted); see also
Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (noting that the relaxed specificity
requirement of Federal Rule of Civil Procedure 9(b) regarding intent is not a "license to base
claims of fraud on speculation and conclusory allegations").  But cf. Aetna Cas. & Sur. Co. v.
Aniero Concrete Co., Inc., 404 F.3d 566, 579 (2d Cir. 2005) ("[C]onclusory assertions of intent
are sufficient if supported by facts giving rise to a strong inference of fraudulent intent [such as]

-10-

allegations of a motive to deceive . . . .").

Viewing all facts in the light most favorable to the plaintiff, the allegations in Aviamax's complaint do not give rise to an inference that Bombardier did not intend to honor its obligations at the time it entered into the Third Amendment.  Other than alleged oral misrepresentations (that are not pled with particularity), Aviamax offers only the allegation that during this time period, Midcoast had failed to deliver other aircrafts for Bombardier in a timely manner.  Therefore, Aviamax claims that the reasonable inference is that Bombardier knew that Midcoast could not deliver the aircraft by August 2008 and made the misrepresentation to prevent Aviamax from cancelling the contract.  Aviamax, however, does not allege who these other purchasers were, how many purchasers existed, or any other circumstances surrounding these alleged delayed deliveries.  Without more than speculation, Aviamax cannot transform a claim that is inherently a claim for breach of contract into a claim for fraudulent misrepresentation.  Therefore, Aviamax has not pled fraud with particularity.

ii.     *Reasonable Reliance*

Bombardier next argues that even if Aviamax could state a fraud claim with particularity, Aviamax is unable to state a claim upon which relief could be granted.  Specifically, Bombardier argues that Aviamax was unreasonable as a matter of law to rely on any statements made outside of the Agreement or Third Amendment, and within the Third Amendment itself, as representing a firm delivery date of August 2008.

"The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to

his injury." <u>Miller v. Appleby</u>, 438 A.2d 811, 813 (Conn. 1981).  The plaintiff must also

demonstrate that its reliance on the misrepresentation was reasonable or justifiable.  <u>See</u> <u>Vertrue</u>

<u>Inc. v. Meshkin</u>, 429 F. Supp. 2d 479, 497 (D.Conn. 2006).

      Here, Aviamax explicitly disclaimed reliance on any alleged oral assurance of a July or

August presentation date in the merger clause of the Third Amendment.  The merger clause states

that

> [t]his Amendment, together with the Agreement constitutes the final, complete,
> and exclusive statement of the terms of the Agreement between the parties
> pertaining to the subject matter of this Amendment and supersedes all prior and
> contemporaneous understandings or agreements of the parties. *No party has been*
> *induced to enter into this Amendment by, nor is any party relying on, any*
> *representation or warranty outside those expressly set forth in this Amendment.*

(Def.'s Ex. 2 (emphasis added).)  Because of this explicit anti-reliance language, Aviamax has

contracted away its ability to rely on any oral representations outside of the Third Amendment.

Cf. id. at 498-99 (indicating that clear anti-reliance language, where the plaintiff contractually

promises to not rely upon statements outside the agreement, is necessary to bar a fraud claim as a

matter of law, but that general integration clauses are evidence of unreasonable reliance).  Instead

of the oral misrepresentations, Aviamax emphasizes that the Third Amendment itself mentions

that "delivery readiness of the Aircraft has been delayed to August 2008;" however, the Third

Amendment also refers to August 30, 2008 as merely a "target date."  Moreover, the Third

Amendment also required Bombardier to pay a substantial amount in liquidated damages if it

delivered the aircraft as late as September 30, 2008—specifically providing for potential delivery

after August 2008.  Therefore, because the Third Amendment clearly designates August 2008 as

merely a "target date" and Aviamax has disclaimed reliance on any representations outside of the

Third Amendment, it is unreasonable as a matter of law for Aviamax to rely on the August 2008 date as a "firm" date of delivery.

iii.    *Causation*

Bombardier also argues that Aviamax cannot state a claim for fraud because Bombardier did not cause Aviamax's losses. Bombardier asserts that by cancelling the Ranch Contract, which required Ranch to purchase the aircraft regardless of the delivery date, in favor of a higher-paying purchaser who required delivery by a specific date, Aviamax caused its own losses.

To recover for fraudulent misrepresentation, the plaintiff must allege injury that is the direct and proximate consequence of the fraudulent representation. Law v. Camp, 116 F. Supp. 2d 295, 308 (D.Conn. 2000). "Thus, in addition to showing that but for defendant's alleged misrepresentations plaintiff would not have suffered his asserted damages, plaintiffs must also show that the misstatements were the reason plaintiffs suffered these damages." Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 549 (D.Conn. 1996). When factors other than the defendant's misrepresentation are an intervening direct cause of the plaintiff's injury, that injury cannot be said to have occurred because of the defendant's actions. Id.

Here, the intervening factor causing Aviamax's losses was Aviamax's cancellation of the "Ranch Contract" which, by Aviamax's own admission, required Ranch to purchase the aircraft regardless of when it was delivered. Aviamax claims that it cancelled the Ranch Contract in reliance on Bombardier's oral promise to deliver the aircraft by July 15, 2008.[3] As noted above,

---

[3] Aviamax argues that it did not promise delivery to Purchaser Two by July 15, 2008, but rather that Purchaser Two cancelled its contract because it was "obvious" to Purchaser Two that Bombardier could not deliver the aircraft by August 2008. However, whether Aviamax told Purchaser Two that the aircraft would be ready by July 15 has no effect on the outcome of this ruling.

however, Aviamax has failed to plead these misrepresentations with particularity. Moreover, this allegation is in clear contrast with the language of the Third Amendment which mentions only a "target" delivery date of August 2008 and discusses damages through the end of September.

The alleged misstatements were not the reason Aviamax suffered damages and is now unable to sell the aircraft. Aviamax would not have experienced the loss of the sale price of the aircraft had it not made the independent decision to cancel the Ranch Contract in favor of a contract with a higher paying purchaser.[4] Therefore, even viewing the facts in the light most favorable to the plaintiff, it is clear that Aviamax's independent decision to cancel the Ranch Contract was the intervening cause of its injury here. Thus, Aviamax's claim of fraudulent misrepresentation is dismissed.[5]

D.      Count Two: Negligent Misrepresentation

To state a claim for negligent misrepresentation, the plaintiff must demonstrate that "(1) defendant supplied false information in the course of business, (2) defendant supplied such information for the guidance of plaintiff in its business, (3) plaintiff justifiably relied upon the information, (4) the false information caused pecuniary loss to plaintiff, and (5) defendant failed to exercise reasonable care or competence in communicating or obtaining the information." Alliance Group Servs., Inc. v. Grassi & Co., 406 F. Supp. 2d 157, 163 (D.Conn. 2005); see also Omega Eng'g, Inc. v. Eastman Kodak Co., 30 F. Supp. 2d 226, 254 (D.Conn. 1998) (noting that

---

[4] It should be noted that following the cancellation of the contract by Purchaser Two, Aviamax was only able to receive a "letter of intent" from Purchaser Three. Although Purchaser Three allowed this letter of intent to expire in September 2008, any loss from this potential sale is also caused by Aviamax's decision to cancel the Ranch Contract.

[5] Because the Court finds that Aviamax cannot prove causation or reasonable reliance as a matter of law, the Court declines to address the issue of inducement.

the injury must also be the "direct and proximate result of the alleged misconduct").  The

plaintiff must also allege and prove that the reliance on the alleged misstatement was reasonable.

Williams Ford, Inc. v. Hartford Courant Co., 657 A.2d 212, 222 (Conn. 1995).  Because the facts

taken in the light most favorable to the plaintiff demonstrate that Aviamax's own independent

decision was the intervening cause of its injury and that Aviamax was not reasonable to rely on

the claimed information, the claim for negligent misrepresentation must also be dismissed.

E.      Count Three: Negligence

To establish a cause of action in negligence, a plaintiff must demonstrate a duty, breach

of that duty, causation, and actual injury.  See Mazurek v. Great Am. Ins. Co., 930 A.2d 682, 690

(Conn. 2007).

Aviamax claims that Bombardier acted negligently in failing to deliver the aircraft within

the time frame required under the Agreement and by employing Midcoast, a subcontractor who

Bombardier allegedly knew was not certified and could not complete the work in a timely

manner.  In its complaint, Aviamax explicitly alleges that "[p]ursuant to the Agreement,

Bombardier owed a duty to Aviamax . . . to employ contractors and subcontractors who were

certified to work on the Aircraft and who could complete such work in a timely manner."

(Compl. at ¶ 50.)   Bombardier argues that "a simple breach of contract is not to be considered a

tort unless a legal duty independent of the contract itself has been violated."  See Clark-

Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).   However, in

Connecticut, "[a] duty to use care may arise from a contract ."  Ward v. Greene, 839 A.2d 1259,

1265 (Conn. 2004).

Assuming that Bombardier did owe Aviamax either of the afore-mentioned "duties,"

it is clear that any breach of these duties was not the proximate cause of Aviamax's injuries. The "fundamental inquiry" regarding proximate cause is whether the plaintiff's harm was "within the scope of foreseeable risk created by the defendant's negligent conduct." <u>Demers v. Rosa</u>, 925 A.2d 1165, 1169 (Conn. App. 2007).  Although proximate cause is usually a question of fact, it becomes a question of law when the mind of a fair and reasonable person could only reach one conclusion.  <u>Stewart v. Federated Dep't Stores, Inc.</u>, 662 A.2d 753, 760 (Conn. 1995).

Here, Aviamax's independent decision to cancel the guaranteed Ranch Contract is both the "but for" and the proximate cause of Aviamax's injuries.  "But for" Aviamax's decision to cancel the Ranch Contract, it would have been able to sell the aircraft.  Additionally, it is not within the "scope of foreseeable risks" that Bombardier's delay in delivering the aircraft would cause Aviamax to cancel a contract requiring the buyer to purchase the aircraft regardless of the delivery date, in favor a contract which did not.  Therefore, because Aviamax's own decision is both the actual and proximate causes of Aviamax's injuries, Aviamax's claim of negligence is dismissed for lack of causation.

F.    Count Four: CUTPA

Aviamax claims that Bombardier violated CUTPA because Bombardier had made similar representations to other aircraft purchasers, has subcontracted with Midcoast to outfit other aircrafts without informing the other purchasers that Midcoast lacked the required certifications, and has caused "significant delays or cancellation of aircraft deliveries in Connecticut of aircraft ordered from Bombardier."  Bombardier argues that Aviamax's CUTPA claim fails as a matter

of law because Aviamax cannot satisfy any of the criteria of the so-called "cigarette rule."[6]

CUTPA prohibits individuals from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.  Conn. Gen. Stat. § 42-110b(a).  To prevail on a CUTPA claim, the plaintiff must establish both that the defendant engaged in a prohibited act and that the prohibited act was the proximate cause of the harm to the plaintiff.  Abrahams v. Young & Rubicam, Inc., 692 A.2d 709, 712 (Conn. 1997).

"It is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]."  Web Press Servs. Corp. v. New London Motors, Inc., 525 A.2d 57, 64 (Conn. 1987) (internal quotations omitted).  To violate CUTPA, an unfair business practice can either strongly satisfy one of these criteria or satisfy all of the criteria to a lesser degree.  Aztec Energy Partners, Inc. v. Sensor Switch, Inc., 531 F. Supp. 2d 226, 232 (D.Conn. 2007).  A "simple breach of contract," however, does not offend traditional notions of fairness

---

[6] Bombardier also argues that Aviamax's CUTPA claim must fail because Aviamax has not alleged a Connecticut connection.  Because Aviamax's CUTPA claim fails for other reasons and because Connecticut law applies, the Court does not address this argument.  See Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc., 406 F. Supp. 2d 175, 200 (D.Conn. 2005) ("CUTPA does not require that a violation actually occur in Connecticut, if the violation is tied to a form of trade or commerce intimately associated with Connecticut or if, where Connecticut choice of law principles are applicable, those principles dictate application of Connecticut law." (internal quotations omitted)).

and does not constitute a violation of CUTPA.  Id. (noting that a plaintiff must allege "sufficient aggravating circumstances" beyond merely a breach of contract to state a CUTPA claim).

i.    *Substantial Injury*

Substantial unjustified injury to consumers is the most important of the three factors.  See Williams Ford, Inc. v. Hartford Courant Co., 657 A.2d 212, 228 (Conn. 1995).  "To justify a finding of unfairness the injury must satisfy three tests.  It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided."  Id.

Aviamax alleges that it suffered millions of dollars in damages as a result of Bombardier's fraudulent misrepresentations.  However, Aviamax has not demonstrated that it could not have reasonably avoided this injury.  Indeed, as discussed above, Aviamax could have reasonably avoided its injuries if it did not make the independent decision to cancel the "Ranch Contract" which required the purchaser to buy the aircraft regardless of when it was completed.

Additionally, although Aviamax claims that other aircraft purchasers were subject to the same alleged misrepresentations and subsequent delays, this claim is simply based on speculation.  Aviamax only states that it "believes" such other purchasers exist, but offers no specific allegations of who these other purchasers are or what circumstances occurred in relation to those purchasers. When a plaintiff in federal court bases a CUTPA claim on fraud allegations, the plaintiff must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). See Tatum v. Oberg, 650 F. Supp. 2d 185, 195 (D.Conn. 2009); see also Lentini v. Fid. Nat'l Title Ins. Co. of N.Y., 479 F. Supp. 2d 292, 298 n.2 (D.Conn. 2007) ("[T]o the extent that the

[CUTPA claims] rely on affirmative statements or omissions involving fraud or mistake, Rule 9(b) applies.").  Here, although Aviamax claims other purchasers were subject to similar fraudulent misrepresentations, it fails to plead this allegation with particularity.  Therefore, Aviamax has not established the existence of a "substantial injury."

iii.     *"Offends Public Policy," "Immoral, Unethical, Oppressive, or Unscrupulous"*

Aviamax argues that Bombardier's fraudulent misrepresentations offended the public policy of Connecticut.  As discussed above, however, when a CUTPA claim is based on allegations of fraud, the fraud must be pled with particularity, which it is not here.  Additionally, the remaining allegations detail only a breach of contract claim which, without more, is insufficient to sustain a CUTPA claim.  See Aztec Energy Partners, Inc., 531 F. Supp. 2d at 232. Finally, given that Aviamax's reliance on the alleged misrepresentations was unreasonable as a matter of law, the making of these representations cannot be deemed "offensive to public policy," "immoral, unethical, oppressive, or unscrupulous."  Therefore, because Aviamax cannot fulfill any element of the "cigarette rule," its CUTPA claim must be dismissed.

iv.     *Proximate Cause*

Finally, even if Aviamax could demonstrate that Bombardier engaged in a prohibited act, as discussed above, Bombardier's allegedly  "prohibited act" was not the proximate cause of Aviamax's injuries; rather, Aviamax's own actions proximately caused its injuries.  Therefore, Aviamax's CUTPA claim may also be dismissed for lack of causation.

**III.**    **Conclusion**

Accordingly, the defendant's motion to dismiss [Dkt # 13] is GRANTED.

-19-

SO ORDERED this ___10th___ day of May 2010, at Hartford, Connecticut.


 /s/Christopher F. Droney_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**